Good morning, Your Honor. May you please call my name is Michael Starr. I'm here representing the American Hotel & Lodging Association and the Asian American Hotel Owners Association. I would like to reserve five minutes for rebuttal. And I will begin by... Can you keep your voice up, please? Certainly. I'll begin by thanking the court for accommodating my trip for New York City by assuring that the temperature in Pasadena today is exactly what it is in New York. It's too bad, isn't it? I'd hope for something better. Yes. Your Honors, we are here today because the City of Los Angeles has passed an ordinance that substantially distorts the economic balance of power between labor and management and interferes with labor-management relations in a significant way. That's established in the record below. It is not disputed. That is the fact record upon which this court must make its determination. But don't all minimum wage requirements imposed by states and sometimes by localities interfere in the process to some extent? Hasn't the Supreme Court recognized that? The answer to your question, first question, Your Honor, is no, not all minimum wage laws do that and the Supreme Court has not recognized that. Well, the Supreme Court has approved the I take it, Your Honor, is referring to the case of Metropolitan Life and Fort Halifax. And I think it would be helpful if we focus on what the issue was in MetLife. Well, I guess, but I'm asking a different question. Okay. So you, why, does your argument, if accepted, invalidate all minimum wage laws or only some? Absolutely not. The Supreme Court decided in MetLife that not all minimum wage laws are machinists. Right. It does not follow from that that each and every minimum wage law is pre, is immune from preemption. So what's special, what's special about yours? What's different about this case, which is the crucial, crucial inquiry, as the Court has said, is that this minimum wage law, purported minimum wage law, substantially distorts the economic power between labor and management and significantly interferes with labor management relations. That's established by the testimony of our expert, Professor Iger, who said in his opinion that it has these effects and it wouldn't be obvious to someone who doesn't understand labor management relations, but to someone who understands the law and practice of labor management relations. Well, we're up here in a preliminary injunction appeal, right? Your Honor? We're up here on review of what? I didn't, I didn't hear your argument. What, what, what, what is the order below that you have appealed? We're appealing the order below that denied a motion for preliminary injunction, finding that we did not establish likelihood of success on the merits. Okay. And so how do we, how do we review the judge's determination that you didn't establish a likelihood of success on the merits? We review that determination with respect to the, whether the court, district court made an error in law. We submit that the district court made two conclusions of law. The first conclusion the district court said was that an order, that minimum wage ordinance is subject to machinist preemption. And that conclusion we think was correct. It's required by this court's decisions in Bechtel and in Bragdon. The next ruling of the district court was that because it's a minimum wage law or minimum labor standards, it's preempted only if it not merely tilts the playing field, but also forces the hand of the employer. Well, that was, that's really the question I'm playing field. Did they not? No, they do not. I don't understand. I don't understand that. If, if when we start bargaining, I know that the state would require me to pay my employee some amount per hour, no matter what the, then it seems to me my employees start out with a chip. They start out knowing that when they bargain, the floor is the minimum wage law. Why, why doesn't it tilt the typical minimum wage law does not interfere in the slightest, does not have but the most inadvertent effect on labor management relations that left open the possibility that there are some minimum wage laws that would have more than an inadvertent effect, that would substantially interfere. I think, Your Honor, I would, I would urge the court to... Yes, but counsel, I think, I think what Judge Hurwitz is getting at, which is my question as well, which is what are the specific facts on the ground here that make this case uniquely tilt the bargaining position in favor of entering into a CBA? Specific factual criteria here. In one case, weeks or days after the statute was enacted, the union president went to the owner of a hotel, it was a non-union hotel, and said to employees, and we'll, you'll have to pay more, but you won't have to pay as much as you have to pay under the city law. That is clearly the use of this statute to affect union organizing. In another instance... So they would be, they could, the union could come in and bargain for $15 an hour. There would be below the minimum wage set by the city. The union can come in and bargain and say, pay all a portion of the service charge, you can keep a portion of it for yourself, and we'll waive everything else. So you could have... Of course, we'll collect union dues. You could have a collective, collectively bargained agreement that, that allowed the employer to pay less than the minimum wage. So what is onerous about that? What's bad about that? Because the union is saying, sign a card check recognition agreement. Give up your right to demand a union organizing election. Give up your right to exclude people from the workplace to influence the employee votes. Give up the right of your employees to have an election to determine the outcome of the election. But does it matter what the union was saying? That's self-evident. The statute says you have to pay a certain amount per hour, but you don't have to if you have a collectively bargained agreement that provides for less. So no matter what, it seems to me what the union rep was saying was, was just reiterating what the statute said, which is if you, if you organize, if you let us come in and organize, we may be able to collectively bargain an agreement below the minimum wage level. Why, why is that different than any other minimum wage? I think it's because the question in each case is whether it frustrates the effective implementation of the act. The union, as the record shows in this case, organizes by card check recognition agreements. That means it's say, let us come in, have us determined by card check recognition, which is not the preferred way in federal labor law to determine majority status. Is the problem here that there's only one union that represents hotel workers? The problem is... And they have certain requirements? Your Honor, I wish I could distill it to the problem. Okay. The problem here is there are a variety of circumstances. That there is one union, that it only organizes by card check recognition agreements, that their card check recognition agreements as critical features, that the features they have are contrary to the preference of the federal labor law, which is that there be an election to determine the outcome and whether there is majority status. Does the card, does the card check recognition agreement require the employer's cooperation? Excuse me? Does the card check recognition agreement require the employer's cooperation? This card check recognition agreement for this union does. It requires that it, A, not say anything and express any view in opposition to the union, and B, give union organizers access to its properties, which under federal labor law, they do not have to. No, but I'm just, so your argument, I take it, is that because of this law, the union got extra leverage to ask the employer to consent to a card check recognition agreement. That's right. The employer could say no, but then it would be subject to the minimum wage law. That's right. And if the employer said yes, it might be giving up some things, but it could bargain for a rate below the minimum wage. What it's giving up is its rights under federal labor law. Well, but it's not, nobody's putting a gun to their head. What you're saying is that the minimum wage makes their, makes their argument for a card check better than it would have been otherwise. I think, Your Honor, the way you articulated it isolates the one legal issue we have here. No, no one put a gun to their head, but they tilted the playing field in a significant way. Okay, so now let's get back to the question Judge Wardlaw and I asked at the beginning, because I'm still not sure I understand. Why is that different than any case in which there's a minimum wage and the union comes to the employer and says, if you'll facilitate our organizing your workforce, we might be able to bargain for a wage below the minimum wage? I think, Your Honor, it's asking the question, why in the abstract is it any different from anything else? And in the abstract, everything is like everything else. It's different because of the facts on the ground. It's different because of the way this industry is organized. Judge Wardlaw, I asked you for the facts on the ground and what you said was the union went to the employer and said, hey, you want to escape the minimum wage? Here's a legal way to do so under the, under the, under the wage, under the agreement, under the statute. That was a fact on the ground of how the union organized it. The predicate of that fact on the ground was the fact, as established in numerous declarations, that this statute puts non-union hotels at a severe competitive disadvantage to other hotels that are either unionized and therefore get the exemption and the waiver or are not unionized and are competitive. The fact on the ground is that this creates a severe competitive disadvantage. Aren't the hotel workers among the lowest paid people in the industry? That's not true. That's not true for my, that's not true for my clients, Your Honor, and that's a critical point to establish here. The larger hotels, in fact, pay above the market. The larger hotels. What is the market? Well, the larger hotels pay their, the minimum wage here was established at $15.37. The declaration... What is the market, you're telling me? I can't answer that question. You can't answer that question? I don't know what the market is for... What do the bus boys make? What do the maids make? I can tell you that. Yeah. The room attendants, we don't call them maids anymore, the room attendants at some of the larger hotels get $16, get over $16 an hour. That's established in the affidavits. In many of the declarations, the only workers who make less than $15.37 are the tipped employees, which, who wind up making $20 an hour or more when you factor in their service charge income. If that's the case, then why are you worried about having a minimum wage of $15.37? The problem is not the $15.37, Your Honor. The problem is the $15.37 plus the provision that you can't keep a portion of the service charge, plus the provision that the entirety of the service charge can't be counted against that satisfying that $15.37, plus the fact that if you, and we haven't gotten to the waiver clause in the implementation problem, but the fact of the matter is that these three provisions taken together, the minimum wage level, the fact that you can't credit the service charge to satisfying that, the fact that you can't keep a portion of the service charge for the house, these provisions create a problem for non-union hotels that they are competitively disadvantaged, severely competitively disadvantaged. Not slightly, not potentially, but in actuality, competitively disadvantaged. So the issue before this Court, I submit, is the fact establishes that this statute makes non-union hotels competitively disadvantaged, severely competitively disadvantaged to union hotels who get a waiver, and the issue is whether, given those facts, is it still immune from preemption. If the, if there were no opt-out, if you will, if there were no waiver for collectively bargained agreements, would this statute be okay in your view? If there were no waiver for collectively bargained agreements, and all those things. No, no, I just don't, you don't remake my hypothetical. I asked you a very specific question. If there were no waiver for collectively bargained agreements, would this statute be legal in your view? Yes. What creates the preemption is that it creates a burden on hotels that can be escaped if you unionize. So if, if all your clients were required to pay 1537 an hour, then you'd be fine. I didn't say, I didn't say that. No, no, no, no, no. I'm not arguing whether I'm fine. I'm arguing whether the statute is preempted by machinists. Come on. Yeah. Okay. Preempted is fair. Okay. I've used, I used the shorthand for preempted by machinists. I'm just trying to understand your position. My argument is if the only thing it did, it raised the minimum wage and then all these other things, which might help. I didn't say about all the other things. I'm just saying it raised the minimum wage. Those other things are all just guaranteed to make sure that the employee is paid the minimum wage, that you don't credit towards the employee's compensation money that the hotel keeps. So my question is, if that's all there were, and there were no exemption for organized, organized labor, then there wouldn't be a preemption. Then there wouldn't be a preemption issue in your view. Okay. All right. You want to save your remaining time? Thank you. Good morning, Paul Moore with Davis Calambo on behalf of intervener appellee Unite Here Local 11. I'll be using 10 minutes of our 15 minutes time, and I'd like to reserve two minutes of that. You're using 10 minutes of the city's time? Our collective time, Your Honor, our collective 15 minutes. Yes. By agreement with the city. All right. It just doesn't make sense to me. It would seem the city would want to take the majority of time to defend its ordinance. Well, Your Honor, as was clear from appellant's presentation, they have made this case about our client and about what our client has done and hasn't done. That's the reason we intervened in the case. And that's the reason why I'm here to defend. Let me ask you something about your client. Is the card check and neutrality requirements subject to negotiation with the hotels? Absolutely. It is subject to negotiation. And let me start with those neutrality agreements, because this is absolutely a sideshow to what is a completely typical ordinance. This is a typical minimum wage ordinance that contains an opt-out of the sort that has been upheld by this court repeatedly. Most recently in the Calip business systems versus city of Los Angeles case, which involved the living wage ordinance contained an identical opt-out for all intents and purposes. This court upheld that last May. This is a typical ordinance. And what appellants are seeking to do here is to turn this into a factual case about what a union might or might not do with that typical ordinance. There is nothing preempted about the ordinance. Now neutrality agreements. This is the argument that is being made is no different from the argument that was made in the viceroy gold case, which we've cited, which is that the combination of what we consider as employers to be onerous minimum labor standards with an opt-out creates an incentive to unionize. And that's unfair. This court looked at that and said, no, that's not the test for preemption. As judge Hurwitz said, all minimum wage laws affect the incentives to unionize by changing the relative price of labor. So if that were the test, there would be no metropolitan life. There would be no Fort Halifax. These cases say, in fact, that minimum labor standards differ fundamentally, not just in how far they go, but they're in existence practically in every state in the union, aren't they? They are. And, and in California, uh, nearly, uh, I think something like two dozen cities have adopted living wage ordinances with opt-out provisions, exactly like the one, uh, that's at issue here. Pasadena, uh, code of ordinance 4.11.110. The provisions of this chapter, this living wage ordinance or any part thereof may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in clear and unambiguous terms. These are absolutely typical types of laws. Now on the neutrality. Why the exception? I mean, that's a strange thing about this case. If you're trying to protect workers and make sure they get at least a minimum wage, why would you let them be paid less than a minimum wage if they were represented by a union? For the same reason, Your Honor, as opt-outs have been in existence  Why don't they've been in existence? I'm just trying to figure out what, what's the, what's the rationale for the opt-out other than, other than favoring union organization? Because legislatures have reasonably concluded that in unionized settings, workers are able through their collective bargaining representative to negotiate packages of wages, benefits, just cause protections, seniority rights, guaranteed work weeks, retirement, pensions, all of which, uh, add up to something more than what the legislation provides. And because, uh, legislatures have decided, uh, Your Honor, that they're not able to legislate in each one of those areas, and they're going to respect a collective bargaining process, which will lead to a result that will be better for workers. And look, if workers don't like the collective bargaining agreement, they won't ratify it. If they want to keep their 1537 an hour and don't want their union to negotiate something that's less than that, they won't ratify the agreement. Now on neutrality agreements, the council has seriously overstated what's in the record here. We have one meeting involving a holiday in Torrance at which the union said, we want you to unionize. Do you know about this law that's coming into effect? If you don't have a collective bargaining agreement, you won't be able to negotiate an opt-out. We're looking at that. We'll consider it. As Your Honor said, they simply stated what's in the law. Well, the owner of that property said, no, we don't want that. We don't want a neutrality agreement. End of story. That's not a basis for holding this law to be facially preempted. Did the judge, judge really didn't rely on the facts in this case? Well, the judge actually, Your Honor, the judge held that there was, that plaintiff's own declarations demonstrated that there was no preemption. Their own declarations demonstrated. But it was a legal ruling, right? The judge didn't say, I don't think, I don't think this case requires a preliminary injunction because you're not going to suffer irreparable harm, even if the law might. So I'm trying to figure out our standard of review. Yes. The owner, Your Honor, the judge below concluded rightly that there was no likelihood of success in this case. But as a matter of law? Well, it's a combined matter of fact and law. So what's our standard of review? The standard of review on whether the judge applied the correct legal standard is de novo, and the judge did. But the judge also made factual findings most relevant to the argument that counsel has put front and center here, was that there was no evidence in all of the declarations that had been presented that any employer was going to be required to enter into a neutrality agreement. They hadn't proved that factually. And what we have is a collection. And we review that one for abuse of discretion? Correct. And what we have here is a collection of declarations from hotel employers, some of which had been subject to an identical for all intents and purposes ordinance that applied in the LAX corridor, which was the predecessor to the citywide version of this, and was an experiment to see, well, how will this work? Well, it worked well. Workers got higher wages. There was no detriment to the hotels there. So it was extended citywide. So we have here really an attempt to distract the court from a legal issue that is absolutely clear. Minimum labor standards, and this is a Supreme Court, a trilogy of Supreme Court cases makes this absolutely clear, the Metropolitan Life case, the Fort Halifax case, and the Lovatus case, that minimum labor standards are not preempted under machinists. They're not preempted because the National Labor Relations Act is a regulation that goes to the collective bargaining process. It does not set out substantive terms of the ultimate contract. That is why minimum wage laws, living wage laws have survived machinist preemption challenges repeatedly in this circuit, and repeatedly in the face of arguments that are identical to the ones that counsel is making. I will touch briefly on one of the arguments that counsel makes, which is that there is going to be some interference with the bargaining process if, as a speculative matter, after the expiration of a collective bargaining agreement, workers enforce their state right to the higher minimum wage. That's another argument that counsel has made. They've said, well, that has to interfere with the collective bargaining process because the CBA, the collective bargaining agreement, will expire, there'll no longer be a waiver, and the minimum wage will be in effect. But that is absolutely a result of how an opt-out works. It's the exact same issue in the NBC versus Bradshaw case, which we cite, where a state overtime provision for the entertainment industry, another targeted state law, applied unless there was a collective bargaining provision that provided otherwise. That agreement, those agreements expired. The union, in the course of bargaining, began filing overtime claims against their collective bargaining agreement to exempt from it. And the employer said, NBC said, well, this is preemptive, we're trying to bargain. And this court said, no, this is simply a result of any minimum wage law that's coupled with an opt-out. There is nothing unusual about this provision, and the attempts to change this into a factual case about a handful of meetings between the union and a handful of hotels back in the fall of 2014 is simply a distraction. As to the unionized properties, and I'll stop in a second, as to those unionized properties, the attempt has been to create a different record from the one before the court below. The claim was that the union was going to withhold negotiated opt-outs in unionized settings until those unionized hotels helped the union organize or did something else for the union. And we proved that to be false. The union has negotiated opt-outs with the two unionized hotels that submitted declarations that weren't conditioned on anything. So the arguments that are being made here are a sideshow. This is an absolutely typical, unusual, and non-preempted law. And I'll reserve whatever is left of my time. Thank you, counsel. Good morning, sir. You've asked for the city of Los Angeles. Could you pick up the microphone just a little bit so we can hear you better? The Hotel Worker Living Wage Ordinance, as written, is a minimum labor standard that focuses on a particular industry and has a narrowly drawn opt-out provision. All of that is perfectly consistent with the National Labor Relations Act. There is no evidence that the text of this ordinance interferes with the collective bargaining process in any way that would lead it to be preempted under the Machinist Charter. Can there be preemption? This is what I've been worrying about listening to both arguments. Let's assume the statute on its face is fine. Can it be preempted because of the way that it's used by the union or is that not a preemption issue? Or is that just an unfair labor practices issue? I think that focusing on Local 11's unionization campaign is a red herring a bit because it is 1537 an hour and I could see a lot of workers not wanting to waive that right in a collective bargaining process situation. I guess I'm asking if the union misuses it in some way and I'm not suggesting they have. Isn't that really an unfair labor practices issue rather than a preemption issue? I believe so, Your Honor. If they believe that the union somehow is doing something inappropriate, then focus on the union's actions rather than the city's ordinance as written. Because, again, there's nothing on the ordinance's face inconsistent with the statute. And that's why you represent the city. And normally we don't say, well, the statute was constitutional when the governing body passed it. But we found out later that people are doing bad things under the statute. We normally stop them from doing the bad things. We don't throw out the statute. Absolutely, Your Honor. And to emphasize, this statute is just one in a long line of living wage ordinances and other wage reforms that the city has enacted in the past 20 years. There were three other living wage ordinances and a wage reform that the city enacted in the last 20 years. And all of them have been facially challenged and upheld. In fact, in 2008, the living wage ordinance that is nearly identical to the hotel worker living wage ordinance that applied to hotel workers in the Century Boulevard corridor near LAX was facially challenged under Machinist and was upheld by the Central District. And they didn't even bother to appeal to the Ninth Circuit because the Ninth Circuit authority is so clearly against them. And I wanted to just address Justice Pregerson's remarks. Our economic studies have shown that almost half of hotel workers are paid below, earn wages below the federal poverty line. And we're here to focus on their plight, not the plight of the hotel industry. This ordinance applies to mega lucrative chain hotels. It's very unlikely that any of them will be put out of business. I'm sorry, I think my time is up. No, your time is not up. It's not up. You have a minute and 56 seconds left and it counts down. So go ahead. Thank you, Your Honor. And our ordinance is to focus on not the more highly paid workers in the hotel industry, but those workers that form the backbone of the hotel industry. The maids, the bellhops, the janitors, the housekeepers, those folks who our economic studies have shown earn the bare minimum under state law. They're really earning quite a low wage and we want to focus on their plight. And that was the compelling fact for City Council. They earn, what, around $9 an hour? Well, now the state minimum wage has been raised to $10. $10. Yes. So our studies showed that they were earning very low wages and that they were relying on government social support services. And we have an interest in protecting those services, which are very scarce. And I also wanted to point out another thing that the hotel industry raised is that our ordinance is incongruent with its purpose because it exempts smaller hotels. Well, that was the result of small hotels lobbying hard against this ordinance and asking that the room threshold be raised. Initially, as contemplated, it was to apply to hotels with 100 rooms or more. But the small hotel lobby came out and told City Council that's bad economic policy. We agreed and we raised it to 150. So we are working at City Council's direction, not at the union's direction. We collaborate with them, but really our ordinance is enacted and drafted and amended at Council's direction. I'm sorry, unless the panel has any questions, I'll submit. Thank you. Thank you. Thank you very much. Mr. Starr, I think you had a couple of minutes. Your Honor, let me begin by saying this case is governed by the Supreme Court decision in that case. The holding of the court was that the critical inquiry is whether the exercise of state authority frustrates effective implementation of the acts processes, not whether the state's purposes were to confer a benefit on a class of citizens. Judge Baratt made a finding of law that the pressure was not so much as to force the economic unfeasibility, therefore it wasn't preempted. The court's decision below was on the degree of interference. Now, that decision, I submit, is inconsistent with this court's decision in Bragdon and in Bechtel, because in both those cases, state or local minimum wage standards were preempted by machinists and there was no showing of economic unfeasibility or that it would force the employer into bankruptcy. So the legal standard of this case, I submit, is governed by New York Telephone, Bragdon and Bechtel, and it's significant that neither the union nor the city, the union which is carrying the ball here, dispute that. Does that mean that those cases involve prevailing wage? That is a misdirection by the union, I must say. In Bragdon, there was a state, a county ordinance that told private sector employers they had to pay a minimum level of wages and benefits. That's a minimum labor standard. But it wasn't a specific number, was it? It wasn't a specific number. It was determined by figuring out the prevailing wage. It was targeted to a listing put out by the state for the prevailing wage, but the prevailing wage is what government contractors have to pay. But the answer to Judge Pregerson's question was yes, that was a prevailing wage case, or was it not? No, it was not a prevailing wage case. It was a minimum labor standard. It was a case in which the government regulated the workplace by telling private sector employers what they had to pay employees. Judge Wardlaw, you identified the difference in RUR. You understand it and you stated for the Court that there's a difference between the government acting as a market participant and a market regulator. Prevailing wages occur when the state acts as a market participant. In this case, in Bragdon and Bechtel, the state acted as a market regulator. When reference is made to prevailing wage, that reference is basically to pay union wages. It is a reference to paying the wages that is prevailing wages, which is typical of most collective bargain agreements. That's true. But the ruling of this Court in that case was not that it was called a prevailing wage, it was that it interfered with what the union and the employer could bargain among themselves. The critical factor is that it was a minimum wage standard. That's what the Court called it. That's what the county called it. And it was preempted under machinists, which puts a lie to the union's argument that minimum wage standards are in a category all by themselves. Minimum wage standards are not preempted when they do not interfere. When they do interfere, they are preempted. That is what New York tells Substantiate. You can make that argument on all minimum wage standards. No, you can't. Well, that argument is made here because what the record shows and how it actually affects. In Fort Halifax, the holding of the Court was that this statute is not preempted because it is a minimum labor standard that does not interfere with collective bargaining. Justice Brennan would not have added that provision that does not interfere with collective bargaining if it wasn't relevant to its holding. It did not interfere with collective bargaining, which is why it's not preempted. To interpret MetLife and Fort Halifax the way the union would have this Court interpret is to, right out of the law, New York telephone. And I submit you can't do that. This Court is bound by that decision as well as the other two. And this Court is also bound by Bechtel and Bragdon. I do want to, if I can, turn for a second to the issue of the Aptow Clause. Well, you're well over your time, counsel. So this is on a preliminary injunction. I assume that the ordinance has now gone into effect. Last July, it's gone into effect. Is there, are you continuing to make a record to show that this is economically unfeasible or that you've put in? There are no further proceedings in the district court. As a matter of fact, the district court had stayed proceedings to await the determination. But there's no final judgment. There's no final judgment. So you could go back and make your factual case to the district court if you want. We can certainly add facts to the district court. We can add facts to the district court about what is happening after July one, when this statute went into effect. That's not in the record. That would be an as-applied challenge. This is your facial challenge. I think the difference between as-applied and facial is not significant in this case. Even if it's a facial challenge, that doesn't mean it's a fact-less challenge. We are saying this statute as-applied in many instances, and we would accept the finding, Your Honor, that this statute is invalidated as applied to all the hotels that submitted declarations in this case. But your declarations are all, if this goes into effect, we're going to suffer these dire consequences. There's nothing in your declarations that says what has happened since the ordinance went into effect. No, because this appeal was filed before it went into effect. All right. All right. Thank you, counsel, for your time. Have a safe trip back. This case will be submitted and we will take up.
judges: Pregerson, Wardlaw, Hurwitz